## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **DEAQUNETTE HUNT and TRACY HARROD**, individually and as representatives of the Class, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) **Civil Action No.:** ) ) |
| **CAPSTONE LOGISTICS, LLC** | ) ) ) |
| Defendant. | ) ) ) |

### PLAINTIFF'S CLASS ACTION COMPLAINT WITH DEMAND FOR JURY TRIAL

Now comes the Plaintiffs, DEAQUNETTE HUNT and TRACY HARROD (hereinafter collectively "Plaintiffs" or "HUNT" and "HARROD"), on behalf of themselves and the putative Class set forth below, and in the public interest, by and through undersigned counsel, and brings this Class Action Complaint against the Defendant, CAPSTONE LOGISTICS, LLC (hereinafter "Defendant" or "CAPSTONE") and states as follows:

### NATURE OF THE CLAIMS

1.      This putative class action is brought against Defendant, pursuant to damages for violations of the Fair Credit Reporting Act ("FCRA") (15 U.S.C. §1681 *et. seq.*) and for costs and attorney's fees. Defendants routinely violated FCRA's core protections by failing to provide employees and job applicants with pre-adverse action notice and a copy of the consumer report prior to taking adverse action against them as required by 15 U.S.C. § 1681b(b)(3).

2. Defendant's violations were committed pursuant to CAPSTONE's internal policies and procedures regarding screening job applicants and employees. Accordingly, Plaintiffs seek to represent those similarly situated, and seeks statutory damages, punitive damages, attorneys' fees, costs and all other relief available under the FCRA.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 15 U.S.C. §1681p, as this action involves federal questions regarding Plaintiffs' rights under the FCRA.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), because all Defendants reside in the Northern District of Georgia and all named Plaintiffs consent to personal jurisdiction therein.

## PARTIES

5. Plaintiff, HUNT, is a natural person, citizen of the United States, and is and was at all times material, a resident of the State of Florida. HUNT is a "consumer" within the meaning of 15 U.S.C. §1681a(c).

6. Plaintiff, HARROD, is a natural person, citizen of the United States, and is and was at all times material, a resident of the State of Pennsylvania. HARROD is a "consumer" within the meaning of 15 U.S.C. §1681a(c).

7. Defendant, CAPSTONE, a Delaware limited liability company is subject to this Court's personal jurisdiction because its principal place of business is located in the Northern District of Georgia and it is authorized to and does conduct substantial and regular business

activities therein. Accordingly, pursuant to 28 U.S.C. 1391 (c)(2) and (d), CAPSTONE resides in the Northern District of Georgia.

## STATUTORY BACKGROUND

8. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job; and second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

9. To safeguard that consumers are aware that reports are being generated about them, and to give consumers opportunities to review the reports and contest inaccuracies and illegalities in the report, Congress established a notification and disclosure regime. Many of these notices and disclosures are specifically designed to govern job applicants and employees whose employers perform background screening on potential job applicants and employees. As discussed below, Defendants routinely violated these basic FCRA requirements.

   I. **FCRA Requirements**

      a. **Pre-Adverse Action Notification**

10. The FCRA requires that any person who uses a report for employment purposes must:

> before taking any adverse action based in whole or in part on the report…provide to the consumer to whom the report relates—
>
> > a) a copy of the report; and
> >
> > b) a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Consumer Financial Protection] Bureau under section 1681g(c)(3).

15 U.S.C. § 1681b(b)(3).

11. The FCRA defines adverse action both as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee" and as "any action taken or determination that is… adverse to the interests of the consumer." See 15 U.S.C. §§ 1681(a)(k)(1)(B)(ii) and 1681a(k)(1)(B)(iv)(II).

### b.   Adverse Action Notification

12. The FCRA requires that any person who procures a report on the consumer for employment purposes and takes adverse action on the employment application of the consumer based in whole or in part on the report, must provide to the consumer to whom the report relates notification:

> a) that adverse action has been taken in whole or in part on a consumer report received from a consumer reporting agency;
>
> b) of the name, address and telephone number of the consumer reporting agency that furnished the consumer report;
>
> c) that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide to the consumer the specific reasons why the adverse action was taken; and
>
> d) that the consumer may, upon providing proper identification, request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report.

15 U.S.C. § 1681b(b)(3)(B)(i).

## FACTS

13. CAPSTONE has over 347 locations throughout the United States at which it provides a variety of warehouse, distribution, maintenance, plant and other related labor services.

14. Upon information and belief, CAPSTONE's violations of the FCRA were committed pursuant to internal policies and procedures regarding screening job applicants and employees and failing to provide proper notice and/or disclosures associated therewith.

## HUNT'S EMPLOYMENT WITH CAPSTONE

15. On or about October 15, 2018, HUNT submitted a job application through Indeed.com for a position with CAPSTONE.

16. CAPSTONE's application for employment through Indeed.com questioned HUNT as to whether she had ever been convicted of a felony to which HUNT replied in the negative. Notably, CAPSTONE's application for employment did not ask HUNT if she had been arrested, committed any misdemeanor offenses and did not provide HUNT an opportunity and/or space to provide any details about her criminal background, if any.

17. Shortly thereafter, Craig Waters (Site Manager) requested HUNT to come to CAPSTONE's workplace located at 1501 Lewis Industrial Dr., Jacksonville, Florida 32254 to tour the facility and interview for a position with CAPSTONE.

18. Craig Waters offered HUNT a full-time "Team Member" position with CAPSTONE at a starting hourly wage of $12.00 per hour.

19. On or about October 29, 2018, HUNT commenced her employment with CAPSTONE and completed CAPSTONE's orientation and training paperwork. HUNT's orientation consisted of CAPSTONE's standards of safety training, code of conduct training and compliance with regard to CAPSTONE's employee handbook.

20. Upon information and belief, CAPSTONE obtained HUNT's background check, hereinafter referred to as the "Hunt Background Report."

21. The Hunt Background Report is a "consumer report" within the meaning of 15 U.S.C. §1681a(d) and §1681b(a)(3)(F)(i) in that it was:

> written…communication of any information by a consumer reporting agency bearing on a consumer's character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's

eligibility… (C) …in connection with a business transaction that was initiated by [HUNT].

22. On November 7, 2018, HUNT received a text message communication from Mr. Waters stating: "… something came up with the background check," and that HUNT's employment was terminated.

23. HUNT was never provided a preliminary notice of adverse action based on the Hunt Background Report, was never provided a copy of the Hunt Background Report by CAPSTONE and was never advised of her rights under the FCRA to dispute the accuracy of the information provided therein.

24. HUNT has been damaged by FAA's illegal conduct.

25. HUNT has retained the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

## HARROD'S EMPLOYMENT WITH CAPSTONE

26. Upon information and belief, in June 2018, HARROD submitted a job application online for a position with CAPSTONE.

27. Shortly thereafter, HARROD received a telephone call from CAPSTONE's Human Resources Department offering him a position at CAPSTONE's Philadelphia, Pennsylvania location at 2727 Commerce Way, Philadelphia, PA 19154.

28. At that time, HARROD was not informed that he was being hired pending the results of his background check.

29. HARROD accepted the full-time position of "Unloader Production" and commenced his employment on or about July 2, 2018.

30. On or about the same, HARROD completed CAPSTONE's orientation and training paperwork. HARROD's orientation consisted of CAPSTONE's standards of safety

training, code of conduct training and compliance with regard to CAPSTONE's employee handbook.

31. Upon information and belief, CAPSTONE obtained HARROD's background check, hereinafter referred to as the "Harrod Background Report."

32. The Harrod Background Report is a "consumer report" within the meaning of 15 U.S.C. §1681a(d) and §1681b(a)(3)(F)(i) in that it was:

> written…communication of any information by a consumer reporting agency bearing on a consumer's character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility… (C) …in connection with a business transaction that was initiated by [HARROD].

33. On December 5, 2018, Mohammad Ali (Site Manager) approached HARROD and asked HARROD to see him "… when his shift was over." Following his shift, HARROD returned to Mr. Ali's office wherein HARROD was terminated.

34. Mr. Ali informed HARROD that his termination was "… because of his background [check]."

35. HARROD was never provided a preliminary notice of adverse action based on the Harrod Background Report, was never provided a copy of the Harrod Background Report by CAPSTONE and was never advised of his rights under the FCRA to dispute the accuracy of the information provided therein.

36. HARROD has been damaged by FAA's illegal conduct.

37. HARROD has retained the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs asserts Count I against CAPSTONE on behalf of the "Adverse Action Notice Class" defined as follows:

> **Adverse Action Notice Class**: All CAPSTONE employees and job applicants against whom adverse employment action was taken based, in whole or in part, on information contained in a consumer report generated within five years of the filing of this complaint through the date of final judgment in this action.

39. <u>Numerosity</u>: The Classes are so numerous that joinder of all Class numbers is impracticable. CAPSTONE regularly obtains and uses information in consumer reports to evaluate employees and job applicants, and CAPSTONE frequently relies on such information, in whole or in part, as a basis for taking adverse employment action.

40. <u>Typicality</u>: Plaintiffs' claims are typical of the Class members' claims. The FCRA violations suffered by Plaintiffs are typical of those suffered by other Class members, and CAPSTONE treated Plaintiffs consistent with other Class members in accordance with their standard policies and practices.

41. <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

   a. Whether CAPSTONE violated the FCRA by taking adverse action against its employees and job applicants on the basis of information in a consumer report without providing pre-adverse action notice;

   b. Whether CAPSTONE's violations were willful;

   c. The proper measure of statutory and punitive damages; and

   d. The proper form of declaratory relief.

42. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. CAPSTONE's conduct described in this complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Class members do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendant by any Class members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgment concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

43. The names and addresses of the Class members are available from Defendant's records.

## COUNT I

### CAPSTONE's Violation of 15 U.S.C. §1681b(b)(3)
### Asserted on behalf of Plaintiffs and the Adverse Action Notice Class

44. Plaintiffs re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-43, above.

45. CAPSTONE has violated the FCRA by taking adverse action against Plaintiffs and the other Adverse Action Notice Class members based, in whole or in part, on consumer report information without providing proper notice. See 15 U.S.C. § 1681b(b)(3).

46. CAPSTONE acted willfully and in deliberate or reckless disregard of its obligations and the rights of Plaintiffs and the other Adverse Action Notice Class members.

47. CAPSTONE's willful conduct is reflected by, *inter alia*, the following:

   a. The FCRA was enacted in 1970; CAPSTONE has had since at least its merger in 2011 to become compliant;

   b. CAPSTONE has access to legal advice through its own general counsel and/or outside employment counsel. Yet there is no contemporaneous evidence that it determined that its conduct was lawful;

   c. CAPSTONE's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute; and

   d. Despite the plain statutory text and there being a depth of guidance available, CAPSTONE has adopted a policy of taking adverse action against its employees and job applicants without giving them proper notice. By adopting this policy, CAPSTONE voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

48. Plaintiffs and the Adverse Action Notice Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. §1681n(a)(1)(A).

49. Plaintiffs and the Adverse Action Notice Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

50. Plaintiffs and the Adverse Action Notice Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

51. Individually, CAPSTONE's violations of 15 U.S.C. §1681b(b)(3) have caused great and irreparable injury to the named Plaintiffs. The named Plaintiffs have suffered damages including, but not limited to, loss of employment and wages and benefits, lost economic opportunities and positions and advances in the future, damage to his reputation, humiliation,

physical pain and suffering, emotional distress, lasting psychological damage, mental anguish, loss of capacity for enjoyment of life, embarrassment, and other losses that are continuing in nature.

**WHEREFORE**, pursuant to 15 U.S.C. §§1681n and o, Plaintiffs demand entry of judgment against CAPSTONE for damages including exemplary and/or punitive damages, costs, pre and post interest, and attorney's fees and such other relief as the court may deem necessary and appropriate.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Classes hereby request a trial by jury on all triable issues herein.

Respectfully Submitted:

*/s/ Gabrielle Klepper*
Gabrielle Klepper
Georgia Bar No.: 341618
**Spielberger Law Group**
202 S. Hoover Blvd.
Tampa, Florida 33609
T: (800) 965-1570
F: (866) 580-7499
gabrielle.klepper@spielbergerlawgroup.com
*Attorneys for Plaintiff*